**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**IN RE: ALYSIA COLEMAN**                                    **NO. 09-10072-DWH**

**GREEN TREE SERVICING LLC**                                 **MOVANT**

**VS.**

**ALYSIA COLEMAN, DEBTOR,
TIMOTHY COLEMAN, CODEBTOR
AND LOCKE D. BARKLEY, TRUSTEE**                              **RESPONDENTS**

**MOTION TO ABANDON COLLATERAL AND LIFT STAY AND CODEBTOR STAY**

Green Tree Servicing LLC ("Green Tree") brings this motion to abandon collateral and lift and terminate the automatic stays of 11 U.S.C. §§ 362 and 1301.

1.     Debtor and codebtor are indebted to Green Tree under a Retail Installment Contract and Security Agreement, a copy of which is attached as Exhibit "A".

2.     As collateral for the indebtedness due, Debtor and codebtor pledged to Green Tree a 1995 Cavalier Homes Manufactured Home, including certain furniture, fixtures, appliances and appurtenances therein as evidenced by the UCC financing statement attached as Exhibit "B".

3.     Debtor has surrendered the Manufactured Home.

WHEREFORE, PREMISES CONSIDERED, Green Tree Servicing LLC requests that this Court abandon its collateral and lift and terminate the automatic stays of 11 U.S.C. §§ 362 and 1301 and grant such other relief as is necessary under the circumstances.

DATED:  May 21, 2010.

**GREEN TREE SERVICING LLC**

By:___/s/ Jeff Rawlings_____
            Its Attorney

## CERTIFICATE OF SERVICE

I served a copy of the foregoing motion on May 21, 2010 by mail to Timothy Coleman, 101 Melody Lane, Senatobia, MS 38668 and via the ECF notification service to Gwendolyn Baptist-Hewlett, sd@baptistlaw.com; Locke D. Barkley, sbeasley@barkley13.com; and the Office of the U. S. Trustee, USTPRegion05.AB.ECF@usdoj.gov.

/s/ Jeff Rawlings
Jeff D. Rawlings

Jeff D. Rawlings
Rawlings & MacInnis, P.A.
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
MSB # 4642

GT-10-00-001 (1/94)    AR, AZ, CO, ... MS, NM, NC, RI, SC, TN, UT, VA, WV, WY    H-RIC    CONSUMER CREDIT DOCUMENT

## MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT (CONV. - FHA - VA)

Date ✓ January 5 , 19 95

BUYER: COLEMAN, TIMOTHY C., COLDWATER, MS 38618    Rt. 2, Box 459
LITTLEJOHN, ALYSIA
(First full name)    (No. Street)    (City - State - Zip)

SELLER: HOLLOWAY HOMES, INC., MID SOUTH HOMES, P.O. BOX 727, SENATALIA, MS 38611

ASSIGNEE: GREEN TREE FINANCIAL CORP-MS, PO BOX 13767, JACKSON, MS 39236
(Name of Financial Institution)    (No. Street)    (City - State - Zip)

### FEDERAL TRUTH-IN-LENDING ACT DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf.) | Total of Payments (The amount I will have paid after I have made all payments as scheduled.) | Total Sale Price (The total cost of my purchase on credit, including my down payment of $ 1758.00 ) |
|---|---|---|---|---|
| 11.25 % | $ 33569.80 | $ 31800.60 | $ 85370.40 | $ 87128.40 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 240 | 355.71 | Monthly beginning 02/05/95 |

SECURITY: I am giving a security interest in:
X The goods or property being purchased.    Real property located at
TRANS FEES: $ 25.00 . LATE CHARGE: If a payment is more than 15 days late, I will be charged $ 5.00 or 5.00 % of the payment, whichever is LESS .
PREPAYMENT: If I pay off early, I may be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying my home may, subject to conditions, be allowed to assume the remainder of the Contract on the original terms. See the Contract document below for any additional information about assumption, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

| ITEMIZATION OF THE AMOUNT FINANCED | | PHYSICAL DAMAGE INSURANCE |
|---|---|---|
| 1. Cash Sale Price (including Taxes of) $ 1084.60    $ 32984.60 | | Physical Damage Insurance is required but I may obtain it from anyone I want that is acceptable to you. If I get the insurance checked below from you or through you, |
| 2. Gross Trade-in ............ $ .00 | | I will pay you $ 549.00 for insurance protection for a term of 01 years. |
| Less Amount Owed on Trade-in ................. $ .00 | | |
| Net Trade-in ................. $ .00 | | |
| Description: Make    Year 0000    Size 00 X 00 | | X Comprehensive ($ 250.00 deductible) |
| 3. Cash Down Payment ........ $ 1758.00 | | X Flood |
| 4. Total Down Payment ................. - $ 1758.00 | | X Liability    X Vendor's Single Interest |
| 5. Unpaid Balance of Cash Sale Price (1 - 4) ........ = $ 31226.60 | | N/A Other |
| 6. Paid to Public Officials ................. + $ 25.00 | | N/A Other |
| 7. Paid to Insurance Companies ................. + $ 549.00 | | N/A Other |
| 8. Paid to Appraiser ................. + $ .00 | | |
| 9. a. Paid to ____ + $ .00 | | **OPTIONAL CREDIT LIFE AND DISABILITY INSURANCE** |
| b. Paid to ____ + $ .00 | | Credit Life and Disability Insurance are not required to obtain credit and will not be provided unless I sign and agree to pay the additional cost. |
| c. Paid to ____ + $ .00 | | |
| d. Paid to ____ + $ .00 | | The term of this insurance is ____ 00 years. |
| e. Paid to ____ + $ .00 | | |
| f. Paid to ____ + $ .00 | | |
| g. Paid to ____ + $ .00 | | |
| h. Paid to ____ + $ .00 | | N/A Single Credit Life Insurance    $ .00 |
| 10. Principal Balance (5 + 6 + 7 + 8 + 9 a.-h.) ....= $ 31800.60 | | N/A Joint Credit Life Insurance    $ .00 |
| 11. Prepaid Finance Charges ................. | | N/A Single Credit Disability Insurance    $ .00 |
| Discount Points ____ + $ .00 | | Total    $ .00 |
| ____ + $ .00 | | |
| ____ + $ .00 | | X ____ |
| ____ + $ .00 | | Signature of Buyer(s) Insured    Date |
| ____ + $ .00 | | |
| 12. Amount Financed (10 - 11) ................. $ 31800.60 | | |

### CONTRACT AND SECURITY AGREEMENT

1. DEFINITIONS: "I", "me", "my" means the Buyer(s). "You", "Your" means the Seller. "Manufactured Home" means both the manufactured home and other property described below. "Contract" means this Retail Installment Contract and Security Agreement.

**Manufactured Home**

| NEW/USED | YEAR AND MAKE | MODEL | SERIAL NUMBER | SIZE |
|---|---|---|---|---|
| N | 1995 | CAVALIER HOMES | | ALCA099453452170 2A/B | 28 X 56 |

| | | | |
|---|---|---|---|
| X Stove | X Refrigerator | ____ Washer | ____ Dryer | X Air Conditioner | ____ Wheels/Axles |

Other (Described) 0140108    SL774733    940732781

2. PURCHASE: I have the option of buying the Manufactured Home for the cash price or buying on credit. The cash price is shown above as the "Cash Sale Price", and the credit price is shown above as the "Total Sale Price". I choose to buy the Manufactured Home on credit.
3. ASSIGNMENT: If there is a financial institution shown as "Assignee" above, you are going to sell this Contract to that financial institution. I will make my payments to the financial institution. "You" and "Your" also means the financial institution after the Contract is sold.
4. SECURITY INTEREST: I give you a security interest under the applicable certificate of title law and the applicable Uniform Commercial Code in the Manufactured Home and any property added or attached to it, to secure my obligation under this Contract. I also assign directly to you any interest I may have in premium refunds or proceeds under any insurance covering the Manufactured Home. I agree to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect your security interest in the Manufactured Home. I authorize you to prepare and file financing statements signed only by you to the extent allowed by law. To the extent, if any, that any Contract (whether or not accompanied by any one or more original constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in the applicable jurisdiction) no security interest in any Contract may be created in any documents other than the original.

### NOTICE: SEE PAGES 2 AND 3 FOR ADDITIONAL TERMS AND CONDITIONS OF THIS CONTRACT

| First Copy - Original | Second Copy - Regional Office | Third Copy - Buyer | Fourth Copy - Seller |
|---|---|---|---|

Green Tree Systems, Inc., St. Cloud, MN 1-800-367-3341 Form GT-AB-RCLA2-1 1/27/94    ORIGINAL COPY    GT-10-00-001 (1/94) Page 1 of 3

5. **PAYMENTS:** I will pay you the amount shown as the "Total of Payments" according to the payment schedule shown on page 1.

6. **LATE CHARGE:** I agree to pay a late charge for late payment as shown on page 1.

7. **FHA INSURANCE PREMIUM:** If my Contract is FHA insured, I agree to pay the credit insurance premium charged to you by the FHA. I will pay the premium disclosed as part of my monthly payment amount. If I prepay my Contract in full, you may charge me for the FHA premium you have paid, but have not yet collected from me. If my Manufactured Home is repossessed, you may add the unamortized FHA premium to my Contract balance.

8. **PREPAYMENT REFUND: I HAVE THE RIGHT TO PREPAY ALL OR PART OF THE UNPAID BALANCE OF THIS CONTRACT WITHOUT ANY PENALTY.** I understand that any prepayment in an amount less than $25.00 will be considered a prepayment of the "Finance Charge" and applied to the next monthly payment due. Any prepayment in an amount of $25.00 or more will be applied as a prepayment of the "Amount Financed" at the next scheduled payment due. If I prepay this Contract in full, you will give me a refund of part of the Finance Charge. Any prepaid finance charge will not be included in figure this refund. The refund will be figured by the actuarial method, except that you will consider I made all payments on the due dates. I will not get a refund if the amount is less than $1.00.

9. **NO WARRANTIES:** I agree that there are no warranties of any type covering the Manufactured Home. I am buying the Manufactured Home AS IS and WITH ALL FAULTS and THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED HOME IS WITH ME. I agree that any implied warranty of merchantability and any implied warranty of fitness for a particular purpose are specifically excluded and do not cover the Manufactured Home. This No Warranties provision does not apply to the extent that any law provides it is not it does not cover any separate written warranties. A statement as to model year is for identification purposes only.

10. **PROTECTION OF THE MANUFACTURED HOME:** I will: (a) keep the Manufactured Home in good condition and not commit waste; (b) pay all taxes, charges and lot rent due for the Manufactured Home and the real estate it is located on; (c) not move the Manufactured Home from its current location without your written consent; (d) not use the Manufactured Home illegally; (e) not sell or lease the Manufactured Home without your written consent; (f) not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property; and (g) not let anybody else have any interest in the Manufactured Home.

11. **INSURANCE:** I will keep the Manufactured Home insured against such risks and in such amounts as you may reasonably require with an insurance company satisfactory to you. I will arrange for you to be named as loss payee on the policy. I agree to provide you written evidence of insurance as requested by you from time to time. I authorize you to furnish account data to a licensed insurance agent of your choice as much agent may solicit the purchase of credit, property, warranty or other insurance from me. I agree that the insurance company may make any payments due under the policy directly to you, and I direct the insurance company to do so. You may do whatever you think is necessary to be sure that any proceeds of the insurance will be used to repair the Manufactured Home or pay off this Contract. I give you a power of attorney (which I cannot cancel) so that you may do whatever you need to in order to collect the insurance proceeds. If I fail to obtain or maintain insurance, or if I fail to arrange for you to be named as loss payee, you may treat that as a default of my obligations under this Contract, and you may find am not required to purchase such insurance. If you purchase such insurance, I will immediately repay you for any amounts you spend in purchasing the insurance, plus interest at the contract rate of interest. If I repay you such amounts spent in purchasing the insurance within thirty (30) days, the default for my failure to provide insurance will be cured.

12. **PERSONAL PROPERTY:** I agree that regardless of how my Manufactured Home is attached to the real property and regardless of how your security interest in my Manufactured Home is perfected and regardless of whether an affidavit or affidavit for other similar instrument identifying the property as a fixture) has been recorded, my Manufactured Home is and shall remain personal property and is not and shall not become a fixture or part of the real property. I agree to pay any and all personal property taxes assessed against my Manufactured Home and agree that failure to pay such taxes shall constitute a default under paragraph 13 of this Contract.

13. **DEFAULT:** I will be in default if: (1) I do not make a payment on time; or (2) I do not keep any of my other promises under this Contract; or (3) I file a case, or someone else files a case against me, under the United States Bankruptcy Code; or (4) you find in good faith that the Manufactured Home is in danger or that I will not be able to continue my payments. The default described under (4) does not apply if this Contract is guaranteed by the Veteran's Administration. You will give me notice of the default except when I voluntarily surrender or abandon the Manufactured Home. I will have the right to cure the default during the notice period. If I do not cure the default, you may do either or both of the following:

   (a) **Acceleration of Payments:** You can require me to immediately pay you the entire remaining balance of this Contract less the refund described in the Prepayment Refund paragraph above.

   (b) **Repossession:** You can repossess the Manufactured Home. Once you get possession of the Manufactured Home you may sell it. If the amount from the sale, after expenses, is less than what I owe you, I will pay you the difference. If there is any property left in the Manufactured Home when you repossess, you may dispose of it as provided by law or if no law applies you will hold it for 30 days; I must claim it within 30 days or you will dispose of it.

If I default, you can do whatever is necessary to correct any default. If you spend money to correct my default, I will pay you back immediately with interest at the contract rate of interest.

14. **FORBEARANCE BY SELLER NOT A WAIVER:** Any forbearance by you in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by you shall not be a waiver of your right to accelerate the maturity of this indebtedness secured by this Contract and declare a default herein.

15. **REMEDIES CUMULATIVE:** All remedies provided in this Contract are distinct and cumulative to any other right or remedy under this Contract or afforded by law or equity, and may be exercised concurrently, independently or successively.

16. **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY:** The covenants and agreements in this Contract shall bind, and the rights hereunder shall inure to, the respective successors and assigns of you and me subject to the provisions of paragraph 18 pertaining to transfer of the Manufactured Home. All covenants and agreements of me shall be joint and several.

17. **NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Contract shall be given in writing by mailing such notice by certified mail, addressed to me at the Manufactured Home address or at such other address as I may designate by notice to you in writing, and (b) any notice to you shall be given in writing by certified mail, return receipt requested, to your address stated herein or to such other address as you may designate by notice to me in writing.

18. **TRANSFER OF MANUFACTURED HOME; ASSUMPTION:** If all or any part of the Manufactured Home or interest therein is sold or otherwise transferred by me without your prior written consent, excluding the creation of a purchase money security interest in household appliances, you may, at your option, declare all the sums secured by this Contract to be immediately due and payable. If you exercise such option to accelerate, you shall mail to me notice of acceleration in accordance with the notice provision herein. Such notice shall provide a period of not less than thirty (30) days from the date the notice is mailed within which I may pay the sums declared due. If I fail to pay such sums prior to the expiration of such period, you may, without further notice or demand on me, invoke any remedies permitted under law. I further understand that if I should relinquish possession of the Manufactured Home pursuant to any lease agreement without your prior written consent, you may invoke any of the remedies set forth herein.

19. **ATTORNEY'S FEE:** If you hire an attorney who is not a salaried employee to collect what I owe under this Contract or to get possession of the Manufactured Home, I may be required to pay your reasonable attorney's fees plus court costs and actual out-of-pocket expenses. If state law provides for a limit on attorney's fees, I will pay only the legal limit.

20. **MISCELLANEOUS PROVISIONS:** This written Contract is the only agreement that covers my purchase of the property. This Contract can only be modified or amended, or provisions in it waived (given up), by a written modification to this Contract signed by you. You can decide not to use or enforce any of your rights under this Contract without losing them. For example, you can extend the time for making some payments without extending others. If any part of this Contract cannot be enforced because of a law which prohibits it, all other parts can still be enforced. I agree to pay You all allowable charges for the return by a depository institution of a dishonored check or other negotiable instrument to the full extent provided by applicable law. I agree to cooperate with you regarding any requests after closing to correct errors made concerning this Contract or the transaction and to provide any and all additional documentation deemed necessary by you to complete this transaction. I agree that you may enforce this agreement by judicial process and are entitled to attorneys' fees, costs and disbursements incident to such enforcement.

21. **ARBITRATION:** All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, Assignee retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision.




## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

GUARANTY: I guarantee that all amounts owed under this Contract will be paid when due. I will remain obligated even if any of the Buyers are released or if you waive (give up) or delay enforcement of any of your rights under this Contract. You do not have to give me notice of any such waiver, delay or release. I also must pay your attorney's fees and other court costs of enforcing this guarantee, as set forth in paragraph 19 on page 2.

X _____                    _____
   (Signature of Guarantor)                              (Address)

X _____                    _____
   (Signature of Guarantor)                              (Address)

NOTICE TO BUYER: 1. DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT.

BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT

NOTICE TO ARIZONA RESIDENTS: THE SELLER IS REGULATED BY THE ARIZONA STATE BANKING DEPARTMENT. ANY COMPLAINTS CONCERNING THE CONTRACT MAY BE ADDRESSED TO SUCH DEPARTMENT. TELEPHONE NO. 602-255-4421.

x ✓ _Timothy C. Coleman_                    x ✓ _Alisia Littlejohn_
   Signature of Buyer   TIMOTHY C. COLEMAN        Signature of Buyer   ALISIA LITTLEJOHN

## ASSIGNMENT

Seller hereby sells, assigns and transfers to Assignee its entire right, title and interest in the Contract and the property described therein (the "Property") with full authority to do every act and thing necessary to collect and discharge same. To induce Assignee to purchase the Contract, Seller warrants that: (a) the Contract and Guaranty, if any, are genuine, legally valid and enforceable and arose from the sale of the Property; (b) the Contract is subject to no defense, counterclaim or setoff; (c) copies of the Contract and all other documents signed by the Buyer(s) were given to the Buyer prior to consummation; (d) Seller has complied with the Truth in Lending Act, the Equal Credit Opportunity Act, the Fair Credit Reporting Act and any regulations thereunder, and all other applicable federal, state and local laws, regulations, rules and ordinances; (e) the Buyer is not a minor and has legal capacity to execute this Contract; (f) the Property is free and clear of all liens and encumbrances except the security interest granted herein and Seller has the right to assign its interest in the Contract; (g) the security interest granted to Seller constitutes a valid first lien on the Property and has been filed or recorded according to law indicating Assignee as first secured party; (h) the down payment shown on the face hereof has been received and no part thereof was advanced directly or indirectly by Seller to Buyer; (i) all statements of fact made in the Contract and all statements made by or on behalf of the Buyer in the credit applications and any other forms relating to the Contract are true to the best of Seller's knowledge and belief; (j) Buyer has physical damage insurance in the amount of the indebtedness; (k) there have been no material changes in the Buyers' income, indebtedness or employment and no other material changes between loan approval and funding. This is a condition to Assignee funding the Contract.

Notwithstanding anything hereto the contrary, if there is a breach of any of the foregoing warranties, as solely determined by Assignee, without regard to the Seller's knowledge with respect thereto or Assignee's reliance thereon, Seller agrees unconditionally to repurchase the Contract from Assignee, upon demand, for the full amount then unpaid plus costs and expenses incurred by Assignee (adjusted for unearned finance charge in accordance with the actuarial method), whether the Contract shall then be, or not be, in default, and to indemnify, defend and hold Assignee harmless from any loss, damages or claims of any nature by reason of such breach of warranty, including attorneys' fees, court costs, disbursements and out-of-pocket expenses.

Seller further agrees that in the event Buyer asserts against Assignee any claim, defense or counterclaim against payment of any sum owing under the Contract or in defense of repossession on the assertion, either oral or written, that the Property is defective, not as represented to Buyer by Seller or that Seller refuses to honor any warranty or service agreement of Seller or the manufacturer, Seller will, upon Assignee's demand, repurchase the Contract from Assignee and pay Assignee the full amount remaining unpaid (adjusted for unearned interest in accordance with the actuarial method) plus Assignee's costs and expenses including attorneys' fees, whether or not any such claim, defense or counterclaim shall be meritorious and without awaiting adjudication of Buyer's claim, defense or counterclaim; and Seller also agrees to indemnify, defend and hold Assignee harmless from any such claims, including attorneys' fees, court costs, disbursements and out-of-pocket expense.

The liability of Seller shall not be affected by any extension, renewal or other change in the manner, place or terms of payment thereof, or the release, settlement or compromise of any party liable for payment thereof, or the release or non-perfection of any security thereunder. Assignee shall not be bound to exhaust its recourse against Buyer or any other person or any security before being entitled to payment by the Seller hereunder. Seller waives notice of acceptance of this Agreement and notices of nonpayment and nonperformance of the Contract and any other notices required by law and waives all setoffs and counterclaims.

In addition, this Assignment includes the provisions of the paragraph below, provided that, if none of the paragraphs below has been checked by the Seller, this Assignment shall be considered to have been checked "With Recourse".

A. "Without Recourse". The assignment of the Contract is and shall be without recourse against the Seller except as provided above and in any dealer agreement between Seller and Assignee relating to the purchase of Contracts.

B. "Limited Recourse". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Recourse", the Seller will, upon demand, repurchase the Contract from Assignee for the full amount remaining unpaid under the Contract.

C. "Repurchase". If the Assignee repossesses the Manufactured Home, the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract.

D. "With Recourse". The Seller unconditionally guarantees payment of the full amount remaining unpaid under the Contract and agrees to purchase the Contract from the Assignee, upon demand, for the full amount then unpaid, whenever the Contract shall be in default.

E. "Limited Repurchase". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Repurchase", the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract if the Assignee repossesses the Manufactured Home.

Seller, by signing below, executes this Contract and also assigns the same to the Assignee in accordance with the provisions of the Seller's Assignment set forth above. Said Seller's Assignment will also include the provisions of that paragraph set forth above which is checked below:

HOLLOWAY HOMES, INC.        MID SOUTH HOMES
SELLER - SECURED PARTY

By: X ✓ _Charles Holloway Jr_          Its: _Chairman_

(   ) A. Without Recourse   (   ) B. Limited Recourse   (   ) C. Repurchase   (   ) D. With Recourse   (   ) E. Limited Repurchase
                            _____ Payments                                                          _____ Payments

JAN 11 1995

Banker Systems, Inc., St. Cloud, MN (1-800-397-2341) Form ST-SERRELAZ-1 1/27/94          QT-10-00-001 (1/94)  page 3 of 3
ORIGINAL COPY

This Financing Statement is presented to the Filing Officer pursuant to the Uniform Commercial Code, UCC-1

**STATE OF MISSISSIPPI**

COUNTY CODE:

**1. Debtor(s)**
COLEMAN, TIMOTHY C.

LITTLEJOHN, ALYSIA

Debtor (Last Name First)/Business Name

Rt. 2, Box 192

Mailing Address

SENATOBIA | MS | 38668

Rt. 2, Box

SENATOBIA | MS | 38668

**2. Secured Party**
HOLLOWAY HOMES, INC.
MID SOUTH HOMES

GREEN TREE FINANCIAL CORP-MS

P.O. BOX 727

PO BOX 13767

Address

BYHALIA | MS | 38611

JACKSON | MS | 39236

**4. This Financing Statement covers the following types (or items) of property:**

1995 CAVALIER HOMES OF AL INC   28 X 56   SERIAL# ALCA0994555521782A/B
AND INCLUDING ALL FURNITURE, FIXTURES, APPURTENANCES THEREIN AND THERETO, INCLUDING BUT NOT
LIMITED TO THOSE ITEMS SPECIFIED ON THE MANUFACTURERS INVOICE AND/OR PURCHASE AGREEMENT AND/OR
INSTALLMENT CONTRACT OR INSTALLMENT LOAN AGREEMENT. "THIS FINANCING STATEMENT DOES NOT APPLY
TO NONPURCHASE MONEY HOUSEHOLD GOODS AS DEFINED AT 16 CRF 444(i) OR THE STATE LAW EQUIVALENT
STATUTE." THIS FINANCING STATEMENT COVERS A MOBILE HOME AND WILL PERFECT THE SECURITY INTEREST
IN SAID MOBILE HOME UNTIL A TERMINATION STATEMENT IS FILED BY THE SECURED PARTY OF RECORD.

JAN 19 1995

FOR FILING OFFICE USE ONLY

**5.** Check ☒ if this statement is filed without the Debtor's signature to perfect a security interest in collateral:
☐ already subject to a security interest in another jurisdiction when it was brought into this state or when Debtor's location was changed to this state.
☐ which is proceeds if the security interest in the original collateral was perfected.
☐ where the original filing has lapsed.
☐ acquired after a change of name, identity, or corporate structure of the Debtor.
☐ if lien to secure payment of royalty proceeds (effective 1 year).

TIMOTHY C. COLEMAN

ALYSIA LITTLEJOHN

HOLLOWAY HOMES, INC., MID SOUTH HOMES,

**6.** Check ☒ if covered: ☐ Products of collateral.     **7.** Number of additional sheets attached: _____

**8.** Financing Statement is filed with: Tate County

Signature(s) of Debtor(s)

Signature(s) of Secured Party(ies)

**(3) FILING OFFICER COPY-ACKNOWLEDGEMENT**

UCC-1 Approved for Use by The Secretary of State of Mississippi 11/71/86